UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 15-cr-00122-EMC-2 |
|---|---|
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| KEVIN BAIRES-REYES, | Docket Nos. 107, 115, 125, 126 |
| Defendant. | |

On January 20, 2015, Defendants Jonathan Flores-Ayar and Kevin Baires-Reyes allegedly committed an armed robbery of a Quick Pick Market in Daly City. Docket No. 1 (Compl.) at ¶ 9. Flores-Ayar allegedly pointed a gun at the Quick Pick Market employee, and demanded money and a bottle of Hennessy cognac liquor, which the employee gave him. *Id.* The two then fled on foot. *Id.* As reflected in the superseding indictment, Baires-Reyes has been charged with: (1) conspiracy to commit robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a); (2) robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a); and (3) use, possession, or brandishing of a firearm during and in relation to and in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Docket No. 88 (Superseding Indictment).

## I.  TRIAL DATE & LENGTH OF TRIAL

Jury selection shall be held on July 29, 2016 at 8:30 a.m. July 29, 2016 is set for a full day, from 8:30 a.m. to 4:30 p.m. If time permits following jury selection, the trial shall begin immediately thereafter, with opening statements and presentment of evidence. Unless the Court orders otherwise, trial days shall last from 8:30 a.m. to 2:00 p.m., with one 15-minute break and one 30-minute lunch break. The parties shall be prepared to go for full days on August 1st and 5th. Thursdays are dark. Parties must arrive by 8:00 a.m., or earlier as needed for any matters to

be heard out of the presence of the jury. The jury shall be called at 8:30 a.m. The trial is to conclude no later than August 5, 2016 (including closing arguments).

## II.    STIPULATIONS

The Court is informed that the parties have yet to reach any stipulations of relevant facts. *See* Docket No. 102 (Government Trial Brief) at 6. At the pretrial conference, the parties stated that they will work on obtaining stipulations regarding authenticity and chain of custody. The Court expects the parties to stipulate to those matters over which there is no reasonable basis for dispute. Accordingly, the parties shall file a joint statement with the Court as to what stipulations they have reached and what stipulations they have tried but not reached by **Wednesday**, **July 20, 2016**.

## III.    WITNESSES

A.    Government's Witnesses

The Government anticipates that presentation of its case-in-chief will take two or three days. Government Pretrial Memo. at 4. The Government has identified the following individuals as witnesses it may call in its case-in-chief. Docket No. 112 (Government Witness List).

Law Enforcement Witnesses

1.    Officer Dan Brown, South San Francisco Police Department (SSFPD) (investigation of the Quick Pick Market robbery, and prior contacts with Baires-Reyes and Flores Ayar)

2.    Sergeant Dave Keenan, SSPD (investigation of the Quick Pick Market robbery, and interaction with Nora Flores)

3.    Detective William Tone, Daly City Police Department (DCPD) (investigation of the Quick Pick Market robbery)

4.    Officer Angelo Garcia Hamilton, DCPD (investigation of the Quick Pick Market robbery)

5.    Officer Joshua Moala, DCPD (investigation of the Quick Pick Market robbery)

6.    Detective Francis Mangan, DCPD (investigation of the Quick Pick Market robbery)

7.    Detective Andre Bray, DCPD (investigation of the Quick Pick Market robbery)

2

8.      Officer Joseph Bocci, DCPD (investigation of the Quick Pick Market robbery)

9.      Special Agent James W. Chen, Homeland Security Investigations (HSI) (subsequent federal investigation of the Quick Pick Market robbery, summary witness, chain of custody)

10.     Special Agent Calvin Wong, HSI (subsequent federal investigation of the Quick Pick Market robbery, summary witness, chain of custody)

The Court cautioned the Government against duplicative testimony.

Civilian Witnesses

1.      Victim 1 (Quick Pick Market robbery, business of the Quick Pick Market)

2.      Victim 2 (Quick Pick Market robbery)

3.      Nora Flores-Ayar (identification of Jonathan Flores-Ayar and her interaction with law enforcement)

4.      Cesar Ortiz (events at 651 Hickey Boulevard, Daly City)

Expert Witnesses

1.      Andrea L. Weidemann, Criminalist II, San Mateo County Sheriff's Office Forensic Laboratory (SMSO) (DNA analysis)

2.      Sally E. Gustavson, Criminalist II, SMSO (latent fingerprint identification and analysis)

3.      Amy S. Lee, Technical Leader and Forensic Serologist III, Serological Research Institute (SERI) (DNA analysis)

4.      Special Agent David Kimball, HSI (cell phone data analysis)[1]

5.      Potential Unidentified Expert (cellular telephone data and location information) (subject to exclusion by the Court if based on records and exhibits not already produced)

---

[1] Because the Court is excluding the cell phone data from Flores-Ayar's phone, as it is not relevant to Baires-Reyes and was not timely produced, this presumably obviates the need to call Mr. Kimball (as well as the unidentified expert on cellular telephone data and location information).

Custodian of Records

    1.      Custodian of Records, San Mateo County Superior Court (certified conviction documents regarding Baires-Reyes's 2014 conviction for carrying a loaded firearm in public and 2014 conviction for possession of a controlled substance)

    2.      Custodian of Records, Seniore's Pizza (business records and regular business practices, *e.g.*, with regard to pizza delivery orders and receipts issued to delivery customers)

    3.      Chain of Custody Witnesses (surveillance video)

B.    Baires-Reyes's Witnesses

Baires-Reyes asserts his right to determine what witnesses and evidence, if any, he will introduce as part of his defense case-in-chief once the Government closes its evidence for its case-in-chief. Docket No. 108 (Baires-Reyes Witness List) at 1-2. In the meantime, he has identified the following individual as a witness.

    1.      Marc Scott Taylor, President and Lab Director of Technical Associates, Inc. (DNA analysis and DNA transfer)

## IV.      GOVERNMENT'S MOTIONS IN LIMINE

A.    Government's Motion in Limine No. 1: Inextricably Intertwined Evidence

The Government's first motion in limine seeks to admit evidence regarding Flores-Ayar's gang affiliation. Docket No. 107 (Gov. Mots. in Limine) at 6. The Government contends that information about Flores-Ayar's gang affiliation, the significance of the Cincinnati Reds hat, and Officer Dan Brown's prior contacts with Flores-Ayar are inextricably linked to the investigation, as it allowed the officers to identify Flores-Ayar. *Id.* at 4-5. Baires-Reyes does not oppose a brief description of the police investigative actions following the robbery to identify Flores-Ayar as a possible suspect and their locating him at the Ortiz residence, but argues that extensive testimony is not required. Docket No. 127 (Baires-Reyes Opp.) at 1.

In general, Federal Rule of Evidence 404(b) renders inadmissible "[e]vidence of a crime, wrong, or other act" to prove the character or criminal propensity of a defendant. *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003). However, Rule 404(b) is inapplicable "where the

evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *Id.* For example, evidence is inextricably intertwined when it is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995); *see United States v. Farley*, Case No. 15-cr-0092-THE, 2015 U.S. Dist. LEXIS 152631, at *17 (N.D. Cal. Nov. 9, 2015) (allowing testimony of prior burglary because it explained how the officer identified the defendant, and that absent such context, the jury "would be left to speculate as to how [the officer] was able to identify Defendant after the case after presumably only seeing him for a few seconds in the living room of the residence, which would invite skepticism about the SFPD officers' motives"); *see also United States v. Fagan*, 996 F.2d 1009, 1015 (9th Cir. 1993) (finding admissible the officer's reference to the defendant's gang membership because it explained how the officer recognized and identified the defendant, and "the brief reference to [the defendant's] gang membership was not likely to provoke an emotional response in the jury wholly apart from its judgment regarding his guilt or innocence of the offenses charged").

Here, Officer Brown responded to the scene because the Cincinnati Reds baseball hat worn by Suspect 1 caught his attention, given its affiliation with the Cypress Park Locos (CPL) gang. Officer Brown then identified Flores-Ayar as Suspect 1 based on the clerk's description, the surveillance video, and his prior interactions with Flores-Ayar, who he believed to be a member of the CPL. Thus, Flores-Ayar's alleged gang affiliation directly resulted in Officer Brown's identification of Suspect 1, and is inextricably intertwined with the investigation. Although the Court raised the question about stipulating to the fact that the police had probable cause to suspect and arrest Mr. Flores-Ayar, Baires-Reyes indicated he intends to attack the quality of police work in connection with the arrest of Baires-Reyes during the search of the Ortiz home; because this calls into question the quality of police work, the circumstances leading to the search are relevant.

The Court therefore **GRANTS** the motion, and will permit the following three pieces of

**United States District Court**
For the Northern District of California

1   information about Flores-Ayar's gang affiliation for the limited purpose of explaining how Officer

2   Brown identified Suspect 1: (1) the significance of the Cincinnati Reds baseball hat, (2) the basis

3   for Officer Brown's belief that Flores-Ayar was a member of the CPL, and (3) Officer Brown's

4   prior contacts with Flores-Ayar.  However, testimony about Flores-Ayar's alleged gang affiliation

5   will be limited to the purpose of Officer Brown's identification of him.  Also, the Government

6   may not show any alleged gang connection between Baires-Reyes and Flores-Ayar; although

7   Officer Brown had prior contacts with both Flores-Ayar and Baires-Reyes, including a January 18,

8   2014 incident where Officer Brown contacted Flores-Ayar and Baires-Reyes together, those prior

9   contacts were not relevant in identifying Baires-Reyes as Suspect 2.

10  B.      Government's Motion in Limine No. 2: Nora Flores-Ayar Statements

11          The Government's second motion in limine seeks admission of Nora Flores-Ayar's

12  statements to the police as an excited utterance and non-hearsay statement of identification.  Gov.

13  Mots. in Limine at 6.  An excited utterance is "[a] statement relating to a startling event or

14  condition, made while the declarant was under the stress of excitement that it caused."  Fed. R.

15  Evid. 803(2).  The Supreme Court has held that such statements are "firmly rooted" exceptions to

16  hearsay.  *Idaho v. Wright*, 497 U.S. 805, 820 (1990); *White v. Illinois*, 502 U.S. 346, 355-56

17  (1992).  "The reasoning for the exception is that such statements are given under circumstances

18  that eliminate the possibility of fabrication, coaching, or confabulation, so that the circumstances

19  surrounding the making of the statement provide sufficient assurance that the statement is

20  trustworthy and that cross-examination would be superfluous."  *Winzer v. Hall*, 494 F.3d 1192,

21  1197 (9th Cir. 2007) (internal quotation omitted).  In determining whether a statement falls within

22  this exception, the Court considers the lapse of time between the startling event and the statement,

23  the apparent state of mind of the declarant, the nature of the startling event, and whether the

24  declarant has a motive to fabricate.  *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1026 (N.D.

25  Cal. 2006) (citing *People of Territory of Guam v. Ignacio*, 10 F.3d 608, 614 (9th Cir. 1993);

26  *United States v. Sherlock*, 962 F.2d 1349, 1365 (9th Cir. 1989); *United States v. Rivera*, 43 F.3d

27  1291, 1296 (9th Cir. 1995)).

28          Here, Nora Flores-Ayar's statements constitute an excited utterance.  First, Nora Flores-

Ayar's statements identifying her brother (Flores-Ayar) as the suspect holding the firearm and saying that he had been "up to no good lately," came almost immediately after the startling event of the police arriving at her residence, showing her the photograph of her brother committing a robbery, and saying words to the effect of "This is why we're doing a probation search." There was no time to reflect or fabricate her statements. Second, her state of mind was clearly distressed, as upon viewing the photographs, she became visibly upset and started crying. *Compare with United States v. Preston*, 2013 U.S. App. LEXIS 4690, at *28-29 (9th Cir. 2013) (finding that statement made while declarant was still crying and visibly upset could be deemed an excited utterance). Third, the precipitating event of seeing a photograph of her brother holding a gun and robbing a convenience store is startling, and her statements directly relate to that event. Finally, there is no evidence that Nora Flores-Ayar had a motive to fabricate her statement. In fact, her motive would be the opposite. Thus, the statements satisfy the excited utterance exception.

Baires-Reyes opposes the motion, arguing that Nora Flores-Ayar's statements are irrelevant under Federal Rule of Evidence 401 as she does not identify Baires-Reyes, only Flores-Ayar. Baires-Reyes Opp. at 4. The identification of Flores-Ayar is relevant because it was part of the investigation which eventually led to the arrest of Baires-Reyes and Flores-Ayar at the Ortiz residence, as well as the evidence obtained there. Further, the statement that her brother "had been up to no good lately" is no more prejudicial than her identifying Flores-Ayar from still footage of the robbery itself. Thus, the Court **GRANTS** the Government's motion to admit Nora Flores-Ayar's prior statements.

C.    Government's Motion in Limine No. 3: Referencing Punishment

The Government's third motion in limine seeks to preclude Baires-Reyes from making "any reference by the defense to the defendant's potential sentence or previous sentences during all phases of the trial." Gov. Mots. in Limine at 8. The Government correctly notes the general rule that "it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). Baires-Reyes opposes to the extent that the Government seeks to prevent defense counsel from arguing the general

1    jurisdictional principles and the protections afforded by the Constitution, including the right of a

2    defendant to a jury trial and proof of guilt beyond a reasonable doubt as protections against

3    improper deprivation of a person's liberty.  Baires-Reyes Opp. at 4.

4        The Government cites no case which holds that high-level and very general statements

5    about the constitutional protections against an improper liberty deprivation.[2]  Such statements will

6    be permitted, although defense counsel may not inform the jury of specific punishments their

7    clients may face, or otherwise seek to prejudice the jury in favor of their clients or encourage

8    nullification.  Accordingly, the Court **GRANTS** the Government's motion, but without prejudice

9    to Baires-Reyes's ability to make legally proper arguments that focus the jury on the seriousness

10   of its role and the protections afforded by the Constitution, without referring to or implying

11   anything about the length of any possible sentence.  In turn, the Government is free to

12   contemporaneously object to any argument it believes crosses the line from permissible to

13   impermissible.

14   D.    Government's Motion in Limine No. 4: *Henthorn*-type Questions

15       The Government's fourth motion in limine seeks to require Baires-Reyes to "make some

16   offer of proof and offer of relevance regarding any alleged misconduct by law enforcement

17   officers outside the presence of the jury prior to inquiring about such misconduct before the jury."

18   Gov. Mots. in Limine at 10.  Citing Rule 403(c), the Government argues that improper questions,

19   especially regarding officer misconduct, should not be presented to the jury if they are ultimately

20   unsupported or irrelevant.  Thus, according to the Government, the Court should decide the

21   admissibility of *Henthorn*-type questioning of witnesses prior to such questioning and outside the

22   presence of the jury.

23       Baires-Reyes has stated that once he receives the personnel or complaint records of the

24   Government's law enforcement witnesses, he "will bring to the attention of the Court and the

25   Government, outside of the presence of the jury, any such relevant evidence."  Baires-Reyes Opp.

---

[2] The Court also notes that the Government has cited no case which holds that a general statement about the serious nature of the jury's role, such as a statement that "this court has serious consequences for the defendant" is improper.  Such generic statements are permissible to focus the jury on the seriousness of their assigned task.

at 5.  Accordingly, the Court **GRANTS** the Government's motion, but without prejudice to Baires-Reyes to introduce such evidence as is relevant and admissible pursuant to proper procedure.[3]

E.    Government's Motion in Limine No. 5: Use of Extrinsic Evidence for Impeachment

The Government's fifth motion in limine seeks to preclude Baires-Reyes from admitting extrinsic evidence for the purpose of impeaching Government witnesses.  Gov. Mots. in Limine at 11.  The Government correctly notes that extrinsic act evidence is typically inadmissible under Rule 608(b) in support or to impeach character for truthfulness, subject to certain exceptions.  Baires-Reyes agrees with the Government's general statement on 608(b), but argues that the motion cannot be resolved until he receives responses to his subpoenas.  Baires-Reyes Opp. at 5.

The Court agrees with Baires-Reyes that it would be premature to apply Rule 608(b) to evidence that has yet to be disclosed.  Without any notion of the evidence at issue, the Court cannot accurately determine whether an exception to Rule 608(b) applies.  Thus, the Court **RESERVES JUDGMENT** on the Government's motion.

F.    Government's Motion in Limine No. 6: Use of Baires-Reyes's Prior Convictions for Impeachment

The Government's sixth motion in limine seeks to allow the government to impeach Baires-Reyes with prior convictions if he tries, specifically his: (1) February 11, 2014 felony conviction for carrying a loaded firearm in public, in violation of California Penal Code section 25850(c)(6), and (2) August 8, 2014 felony conviction for possession of a controlled substance, in violation of California Health and Safety Code section 11350(a).  Gov. Mots. in Limine at 13.  "Under Rule 609(a), evidence of a prior conviction may be admitted for impeachment purposes if the probative value out-weighs the prejudicial effect of admission."  *United States v. Martinez-*

---

[3] The Court does not agree, however, that unsustained complaints against police officers can never be admitted.  In *United States v. Jones*, the Ninth Circuit explained that a district court *could* exclude such complaints after applying the traditional Federal Rule of Evidence 403 analysis by "concluding that its probative value was substantially outweighed by the risk of unfair prejudice due to the inherently unreliable nature of unsustained complaints and the danger of confusing the issues and wasting time with mini-trials regarding the events underlying different complaints." 123 Fed. Appx. 773, 775 (9th Cir. 2005).

*Martinez*, 369 F.3d 1076, 1088 (9th Cir. 2004). The Court considers five factors in balancing the probative value of a defendant's prior convictions against the evidence's prejudicial effect: (1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness's subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue. *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000).

With respect to the February 11, 2014 felony conviction for carrying a loaded firearm, the impeachment value is less than that of a conviction with expressly involves dishonesty, which weighs against admissibility. *E.g.*, *United States v. Landry*, No. CR 13-00466 JSW, 2015 U.S. Dist. LEXIS 60196, at *3 (N.D. Cal. May 7, 2015). In favor of admissibility is that the conviction is fairly recent, less than a year prior to the Quick Pick Market robbery. However, the similarity between the past crime and the charged crime weighs heavily against admissibility for impeachment purposes, as both crimes involve not only a firearm but the presence of Flores-Ayar, although Flores-Ayar was not charged in the February 11, 2014 felony conviction. This creates a risk of prejudicial effect which is not outweighed by the low impeachment value. Accordingly, the February 11, 2014 felony conviction is inadmissible for impeachment purposes.

As to the August 8, 2014 felony conviction for possession of a controlled substance, the impeachment value is high because the Ninth Circuit has found that "[p]rior convictions for drug offenses are probative of veracity . . . ." *United States v. Cordoba*, 104 F.3d 225, 229 (9th Cir. 1997); *see also Alexander*, 48 F.3d at 1488 (finding prior convictions for drug offenses are probative of veracity). The conviction is recent, less than half a year prior to the Quick Pick Market robbery. Further, the drug offense is sufficiently different from the present Hobbs Act robbery charges. *Compare with Alexander*, 48 F.3d at 1488 ("the third factor is satisfied because the drug offense is sufficiently different from the present bank robbery"). Combined with the general importance of a defendant's credibility when he takes the stand and denies having committed the charged offense, these factors weigh in favor of admitting the August 8, 2014 felony conviction for impeachment purposes.

Accordingly, the Court **GRANTS** the  motion as to the August 8, 2014 felony conviction,

and **DENIES** the motion as to the February 11, 2014 felony conviction for impeachment purposes.

G. Government's Motion in Limine No. 7: Evidentiary Basis for Claim that Someone Else Committed the Crime

The Government's seventh motion in limine seeks to prevent Baires-Reyes from asserting that a specific third-party is guilty without some showing that there is admissible evidence to support the claim. Gov. Mots. in Limine at 14. In general, "[a] defendant is entitled to introduce evidence which tends to prove someone else committed the crime." *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991). The district court retains the ability to exclude the evidence as irrelevant under Rule 402, or as likely to confuse the issues or mislead the jury under Rule 403. *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir. 1980); *Perkins*, 937 F.2d at 1400.

The Court finds that the Government's request is premature because there is no indication that Baires-Reyes intends to identify a specific third-party. The Court therefore **RESERVES JUDGMENT** on the Government's motion.

H. Government's Motion in Limine No. 8: Negative Inference from Absence of Evidence or Testing

The Government's eighth motion in limine seeks to preclude Baires-Reyes from arguing a negative inference from the absence of any particular type of evidence or testing, *i.e.*, to argue that a particular type of evidence is required in order to convict or that the jury cannot convict without a particular type of evidence. Gov. Mots. in Limine at 16. Baires-Reyes opposes, arguing that he has the right to question the adequacy of the Government's proof or point out where the Government took or failed to take certain investigative steps to develop evidence of guilt. Baires-Reyes Opp. at 8-9. The Court agrees with Baires-Reyes. The Government has not cited any cases for the broad proposition that a defendant can be prevented from arguing negative inferences based on the lack of evidence or testing.[4] The Court **DENIES** this motion.

---

[4] *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006), simply found that a federal conviction may be supported by the uncorroborated testimony of even a single accomplice witness. It does not stand for the proposition that a defendant can be precluded from arguing a negative inference based on the lack of a particular evidence or testing.

I.      <u>Government's Motion in Limine No. 9: Exclusion of Undisclosed Affirmative Defenses</u>

The Government's ninth motion in limine seeks an order requiring Baires-Reyes to present a specific evidentiary basis for any affirmative defense he intends to assert. Gov. Mots. in Limine at 16. During the pretrial conference, the Government stated that there are certain affirmative defenses that must be disclosed prior to trial. The Government is to provide this case law to defense counsel and the Court by **July 12, 2016**, after which the Court will issue a ruling on this motion. The Court notes the distinction between asserting the absence of an element needed for conviction (*e.g.*, awareness a gun would be used in connection with the robbery) and a defense such as duress.

J.      <u>Government's Motion in Limine No. 10: 404(b) Evidence of Baires-Reyes's Knowledge of Firearms</u>

The Government's tenth motion in limine seeks to admit evidence of Baires-Reyes's January 2014 conviction for the unlawful possession of a firearm. Gov. Mots. in Limine at 16. "Evidence of 'other acts' is admissible under Rule 404(b) when: (1) sufficient evidence exists for the jury to find that the defendant committed the other acts; (2) the other acts are introduced to prove a material issue in the case; (3) the other acts are not too remote in time; and (4) if they are admitted to prove intent, the other acts are similar to the offense charged." *United States v. Murillo*, 255 F.3d 1169, 1175 (9th Cir. 2001). Here, the Government seeks to introduce a conviction that occurred approximately one year before the Quick Pick Market robbery, favoring admissibility. The Government contends that the conviction is admissible because it is relevant to prove knowledge, specifically Baires-Reyes's knowledge that the gun used by Flores-Ayar was a real firearm. *Id.* at 18. Such knowledge is necessary following the Supreme Court's decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), which found that for a defendant to have "the intent needed to aid and abet a § 924(c) violation," the defendant must have knowledge "that one of his confederates will carry a gun." *Id.* at 1249. When the defendant has such knowledge, "the accomplish has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope--that the plan calls not just for a drug sale, but for an armed one. In so doing, he has chosen . . . to align himself with the illegal scheme in its entirety -- including its use

of a firearm." *Id.*

The Court **GRANTS** the Government's motion to admit the January 2014 conviction for the limited purpose of showing that Baires-Reyes had knowledge of firearms, but only if Baires-Reyes testifies or makes the argument that he would not have recognized the object in Suspect 1's hands as a real gun. Absent such, the January 2014 conviction will not be admitted. If the argument is raised in Defendant's closing argument, the Court reserves the authority to reopen evidence to allow introduction of the conviction.

## V.    BAIRES-REYES'S MOTIONS IN LIMINE

A.    Baires-Reyes Motion in Limine No. 1: Exclusion of Prior Bad Acts and Criminal Convictions

Baires-Reyes's first motion in limine seeks to exclude prior acts of misconduct and convictions under Rule 404(b). Docket No. 115 (Baires-Reyes Mots. in Limine) at 1. The Government contends that the only prior act and conviction at issue is Baires-Reyes's January 2014 conviction for the unlawful possession of a firearm, which it contends is highly relevant and admissible to show knowledge, intent, and the absence of mistake. Docket No. 124 (Gov. Opp. to Mots. in Limine) at 1. For the same reasons stated with respect to the Government's tenth motion in limine and subject to the limitations mentioned herein, the Court **DENIES** this motion.

B.    Baires-Reyes Motion in Limine No. 2: Limiting Cross-Examination of Baires-Reyes re Prior Bad Acts

Baires-Reyes's second motion in limine seeks to exclude Baires-Reyes's conviction for possession of a firearm for impeachment purposes. Baires-Reyes Mots. in Limine at 4. For the reasons stated with respect to the Government's sixth motion in limine, the Court **GRANTS** this motion.

C.    Baires-Reyes Motion in Limine No. 3: Exclusion of Baires-Reyes Alleged Affiliation with Nortenos or Cypress Park Locos

Baires-Reyes's third motion in limine seeks to exclude allegations and evidence of Baires-Reyes's alleged affiliation with the Nortenos or CPL. Baires-Reyes Mots. in Limine at 6. The Government responds that it does not intend to affirmatively introduce evidence of Baires-Reyes's

1   gang affiliation during its chief-in-chief, but reserves its right to do so for impeachment or rebuttal

2   purposes.  Gov. Opp. to Mots. in Limine at 9.  The Supreme Court has found that evidence of

3   gang membership is permissible to impeach a witness by showing his bias.  *United States v. Abel*,

4   469 U.S. 45, 51-52 (1984).  However, the Court must still apply a Rule 403 balancing to

5   determine if the probative value of the gang affiliation is substantially outweighed by a danger of

6   undue prejudice.  *See id.* at 53.  Here, there would be substantial risk of undue prejudice by

7   introducing evidence of Baires-Reyes's alleged gang affiliation; in addition to general prejudice

8   against potential gang members, a jury may be more likely to believe that Baires-Reyes and

9   Flores-Ayar committed the crime together even though the Government has not argued that the

10  robbery was in any way related to gang activity.  There would also likely be confusion of the

11  issues, as whether Baires-Reyes and Cesar Ortiz are members of the same gang and the tenets of

12  the gang will need to be shown in order to prove the collateral issue of bias.  These risks outweigh

13  the probative value of impeaching Baires-Reyes or Cesar Ortiz based on their alleged gang

14  membership, particularly when, for example, Cesar Ortiz could be impeached based on his prior

15  statements.  The Court **GRANTS** this motion in limine.

16  D.    Baires-Reyes Motion in Limine Nos. 4: Exclusion of Flores-Ayar's Alleged Affiliation

17        with Gangs

18        Baires-Reyes's fourth motion in limine is to exclude evidence of Flores-Ayar's alleged

19  affiliation with gangs.  Baires-Reyes Mots. in Limine at 8.  As discussed above with respect to the

20  Government's first motion in limine, Flores-Ayar's alleged gang affiliation is inextricably

21  intertwined with how Officer Brown ultimately identified Flores-Ayar as Suspect 1, an integral

22  part of the investigation.  The Court therefore **DENIES** this motion in limine subject to limitations

23  discussed above.

24  E.    Baires-Reyes's Motion in Limine No. 5: Exclusion of Cesar Ortiz's Alleged Affiliation

25        with Gangs

26        Baires-Reyes's fifth motion in limine is to exclude evidence of Cesar Ortiz's alleged

27  affiliation with gangs.  Baires-Reyes Mots. in Limine at 8.  At the pretrial conference, the

28  Government indicated that it only intended to bring in evidence of Cesar Ortiz's alleged affiliation

with gangs to explain in part how they narrowed the investigation to the Ortiz residence. Given the limited probative value when there is other evidence for why the officers investigated the Ortiz residence, and the risk of undue prejudice if Baires-Reyes is associated with two people allegedly from the same gang, the Court **GRANTS** the motion and will exclude any examination of Cesar Ortiz and his gang membership under Rule 403.

The Government shall minimize the use of photos that highlight or focus on the alleged gang graffiti. This ruling is without prejudice if defense counsel opens the door to such questions. In such a case, a sidebar discussion of these issues will be appropriate prior to questioning Cesar Ortiz on any alleged gang affiliation or display of photos.

F.    Baires-Reyes Motion in Limine No. 6: Exclusion of Flores-Ayar Guilty Plea, Statements at Plea Hearing, and Conviction

Baires-Reyes's sixth motion in limine seeks to preclude Flores-Ayar's guilty plea, statements at the plea hearing, and conviction, on grounds of relevance (Fed. R. Evid. 402) and undue prejudice (Fed. R. Evid. 403). Baires-Reyes Mots. in Limine at 9. The Government agrees, except if Baires-Reyes suggests that Flores-Ayar was not the suspect holding the firearm. Gov. Opp. to Mots. in Limine at 10. The Court therefore **GRANTS** Baires-Reyes's motion, without prejudice to a later determination of whether the Government may properly introduce Flores-Ayar's guilty plea in the event that Baires-Reyes suggests that Flores-Ayar was not involved in the Quick Pick Market robbery.

G.    Baires-Reyes Motion in Limine No. 7: Exclusion of Third-Party Out-of-Court Statements

Baires-Reyes's seventh motion in limine seeks to exclude the out-of-court statements of Cesar Ortiz and Nora Flores-Ayar, arguing that in the event these witnesses do not appear to testify, their out-of-court statements are hearsay and inadmissible. Baires-Reyes Mots. in Limine at 9. The Government responds that it will not seek to introduce these prior statements except to rebut charges of recent fabrication and/or impeach with prior inconsistent statements. Gov. Opp. to Mots. in Limine at 11. The Court thus **GRANTS** this motion, except to the excited utterance statements of Nora Flores-Ayar, which as discussed with respect to the Government's second motion in limine is an excited utterance and therefore not inadmissible hearsay.

**United States District Court**
For the Northern District of California

# VI.    BAIRES-REYES'S OTHER MOTIONS

A.    Motion to Dismiss (Docket No. 125)

Baires-Reyes also moves to dismiss count three of the indictment, possession and brandishing of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c).  Docket No. 125 (Mot. to Dismiss) at 1.  Section 924(c) provides mandatory minimum penalties for conduct involving a firearm in relation to an underlying offense, in this case a crime of violence.  For purposes of this section, the term "a crime of violence" is defined as:

> an offense that is a felony and--
>
> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Baires-Reyes contends that Hobbs Act robbery does not qualify as a crime of violence under section 924(c)(3)(A), otherwise known as the "force clause."[5]

The Hobbs Act states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).  Robbery, in turn, is defined by the Hobbs Act:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  The Ninth Circuit has recognized that the Hobbs Act defines the crime

---

[5] The Court also finds that Hobbs Act robbery does not qualify as a crime of violence under section 924(c)(3)(B) (the "residual clause"), as the Court previously found that the residual clause is unconstitutionally vague per *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). Docket No. 83 at 5-8.

using "several permutations, any one of which constitutes the same offense." *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993). Thus, the Court "need only find that the charged crime for which the defendant was convicted constitutes a 'crime of violence' to conclude categorically that the charged offense may serve as a predicate for a § 924(c) violation," *id.* at 1491, in this case Hobbs Act robbery.

In *Mendez*, the Ninth Circuit held that Hobbs Act robbery "indisputably qualifies as a crime of violence." *Id.* However, Baires-Reyes argues that *Mendez* is no longer good law following the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*). Mot. to Dismiss at 5. There, the Supreme Court explained that when Section 924(e)'s identically worded force clause required "physical force," it meant "*violent* force--that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. Baires-Reyes argues that following *Johnson I*, *Mendez*'s finding that Hobbs Act robbery "indisputably qualifies as a crime of violence" is questionable, citing the Ninth Circuit's recent decision in *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016).[6] Mot. to Dismiss at 6. In *Parnell*, the Ninth Circuit found that the force required by the actual force prong of robbery under Massachusetts law did not satisfy the requirement of physical force under Section 924(e)'s force clause, or "force capable of causing physical pain or injury to another person." *Parnell*, 818 F.3d at 979. This was because Massachusetts law expressly did not require a particular level of force;

---

[6] The Ninth Circuit has not yet construed the term "physical force" as defined by section 924(c), and whether *Johnson I*'s definition should apply. *See United States v. Bailey*, CR14-328-CAS, 2016 U.S. Dist. LEXIS 75556, at *8 n.3 (C.D. Cal. June 8, 2016). Some courts have questioned whether *Johnson I* is applicable to section 924(c). *See United States v. Pena*, 15-cr-551 (AJN), 2016 U.S. Dist. LEXIS 18329, at *6-12 (S.D.N.Y. Feb. 11, 2016) (declining to apply *Johnson I*'s force definition because *Johnson I* concerned the Armed Career Criminal Act (ACCA)). However, in *United States v. Bell*, Judge Orrick concluded that "physical force" under section 924(c)'s force clause "carries the same meaning as under the ACCA force clause," and thus applied *Johnson I*. Case No. 15-cr-258-WHO, 2016 U.S. Dist. LEXIS 11035, at *7 (N.D. Cal. Jan. 28, 2016). In so finding, Judge Orrick explained that "[t]he Ninth Circuit has since expanded [*Johnson I*'s] definition of 'physical force' to other generic offense provisions, including 18 U.S.C. § 16(a) and U.S.S.G. § 2L1.2, both of which define 'crime of violence' using language that is identical or essentially identical to that used in the ACCA force clause and the section 924(c)(3) force clause." *Id.*; *see also Bailey*, 2016 U.S. Dist. LEXIS 75556, at *9 n.3 (following *Bell* and applying *Johnson I*'s definition of physical force to section 924(c)'s force clause). The Government does not appear to dispute that "physical force" under section 924(c)'s force clause has the same meaning as under the ACCA force clause.

17

instead, the degree of force required to commit armed robbery in Massachusetts was immaterial as long as the victim was aware of it. *Id.* at 981; *see also id.* at 979 ("Because the *degree* of force is immaterial, any force, however slight, will satisfy this prong so long as the victim is aware of it") (internal quotation omitted). The Ninth Circuit concluded that such force was insufficient under *Johnson I.*

However, *Parnell* is distinguishable because there, the Massachusetts courts had expressly found that the degree of force was immaterial. 818 F.3d at 979. As explained by Judge Watford's concurrence, *Parnell* was "compelled by two oddities of Massachusetts law," the first of which was that Massachusetts had "abandoned the traditional common-law definition of robbery." *Id.* at 982 (Watford, J., concurring). At common law, robbery was distinguishable from larceny because to commit robbery, "the defendant also had to use violence or intimidation to coerce the victim into parting with his property. *Id.* By contrast, a defendant could be convicted of robbery under Massachusetts law "without using violence or intimidation of any sort." *Id.* In short, under Massachusetts law, "[i]t's enough . . . if the defendant sneaks up behind the victim and snatches a purse from her hand without so much as touching the victim or doing anything to put her in fear beforehand." *Id.*

The other cases relied upon by Baires-Reyes also concerned state law with the same "oddity" described by Judge Watford. In *United States v. Gardner*, the Fourth Circuit found that North Carolina's robbery statute was not categorically a violent felony because North Carolina cases had found that "the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property. This definition, therefore, suggests that even *de minimis* contact can constitute the 'violence' necessary for a common law robbery conviction under North Carolina law." No. 14-4533, 2016 U.S. App. LEXIS 9066, at *17-18. Because "even minimal contact may be sufficient to sustain a robbery conviction if the victim forfeits his or her property in response," it did not qualify categorically as a violent felony under the ACCA. *Id.* at *18-19. Likewise, in *Robinson v. United States*, the district court concluded that the Wisconsin robbery statute did not categorically qualify as a violent felony under the ACCA's force clause because Wisconsin courts had found that only minimal force was required. Case No. 16-c-156, 2016 U.S.

18

Dist. LEXIS 68036, at *21 (E.D. Wis. May 24, 2016).  In so finding, the district court compared the Wisconsin robbery statute to the Massachusetts armed robbery statute analyzed by *Parnell*, in which "the degree of force is immaterial so long as it is sufficient to obtain the victim's property against his will." *Id.* at *18-19 (internal quotation omitted).

This "oddity" is not apparent with respect to Hobbs Act robbery.  In *United States v. Pena*, the district court thoroughly explained why the Hobbs Act's "force" requirement satisfied section 924(c)'s force clause.  2016 U.S. Dist. LEXIS 18329, at *16.  There, the defendant argued that in defining Hobbs Act robbery as the unlawful taking of property "by means of actual or threatened force, or violence, or fear of injury," the term "force" referred to "mere offensive touching," in violation of *Johnson I*. *Id.*  The defendant argued that the term "force" had to mean less-than-violent force because it needed to have a meaning independent of "violence" contained in the same clause.  *Id.* at *17.  The district court disagreed, explaining that "[i]f 'force' means any force, no matter how slight, that includes violence and makes 'violence' surplus." *Id.*  Further, the district court found that a more natural way of "read[ing] the means of committing Hobbs Act robbery is not as a list of alternate elements with separate meanings . . . but as a series of overlapping words meant to capture a range of conduct." *Id.*  Thus, "[t]he fact that the statute lists both force and violence does not establish that the lower bound of that range is mere 'offensive touching.'"  The district court also looked to the history of Hobbs Act robbery, which was "taken almost verbatim from the New York robbery statute in existence at the time the Hobbs Act was passed." *Id.* at *19.  It found that "[t]he phrase 'offensive touching' (nor its variations 'mere' 'intentional,' or 'unpermitted' touching) has never been adequate force for the purposes of robbery . . . . On the contrary, the force element of robbery has traditionally been identified with strong or violent force." *Id.*  In support, it cited various supplemental sources and old New York cases, which defined robbery as being committed by violent assault, or through the use of violence or intimidation.  *Id.* at *19-20; *see also Parnell*, 818 F.3d at 982 (Watford, J., concurring) (under common law, "[t]o commit robbery, the defendant also had to use violence or intimidation to coerce the victim into parting with his property"); *United States v. Smith*, 2:11-cr-58-JAD-CWH, 2016 U.S. Dist. LEXIS 65543, at *13 (D. Nev. May 18, 2016) (explaining that the Hobbs "Act's

19

robbery definition is based on the traditional definition of robbery, which requires an intentional taking through the use of force of violence").  Finally, the district court looked at cases applying the Hobbs Act, and found that there was "no 'realistic probability' that the Hobbs Act would be applied to minimally-forceful conduct . . . ."  *Pena*, 2016 U.S. Dist. LEXIS 18239, at *25.  It noted that the defendant "ha[d] presented *not a single case* applying Hobbs Act robbery to conduct involving mere touching or any other variation on the minimal use of force[, n]or has the Court found such a case through its own research."  *Id.*  For all those reasons, the district court concluded that the Hobbs Act did not involve only minimal force, and thus constituted a crime of violence under section 924(c)'s force clause.

The Court likewise concludes that the Hobbs Act would not be satisfied by the "minimal" or "immaterial" amount of force required by the Massachusetts statute in *Parnell*.  Instead, every district court to have analyzed the issue has concluded that Hobbs Act robbery is a crime of violence under section 924(c)'s force clause.  *E.g.*, *Bailey*, 2016 U.S. Dist. LEXIS 75556 at *12-13 (listing and agreeing with cases that found that Hobbs Act robbery constitutes a crime of violence under the force clause).  The Ninth Circuit in *Mendez* concluded that Hobbs Act robbery "indisputably qualifies as a crime of violence," 992 F.2d at 1491, and recently reiterated that finding in *United States v. Howard*, No. 15-10042, 2016 U.S. App. LEXIS 9434, at *2 (9th Cir. May 23, 2016).[7]  The Court therefore **DENIES** Baires-Reyes's motion to dismiss.

B.     Second Motion to Suppress Evidence (Docket No. 126)

Baires-Reyes has filed a second motion to suppress evidence, relying on the Ninth Circuit's decision in *United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016).  Docket No. 126 (Mot. to Suppress) at 2.  There, the Ninth Circuit explained that the "knock and talk" exception to the warrant requirement applied only when the government "demonstrate[s] that the officers

---

[7] The Court acknowledges that *Howard* only considered the question of whether Hobbs Act robbery could be accomplished by putting someone in "fear of injury," and thus whether it necessarily involved the use, attempted use, or threatened use of physical force.  *Id.* at *2.  *Howard* expressly did not consider the question of whether Hobbs Act robbery could be accomplished through *de minimis* use of force or the applicability of *Parnell*, as the defendant did not make such an argument.  *Id.* at *2 n.1.  Thus, the Ninth Circuit declined to take a "position on that issue or the applicability of these precedents to Hobbs Act robbery."  *Id.*

conformed to the habits of the country by doing no more than any private citizen might do." *Id.* at 1159 (internal quotations omitted). Thus, where the officers knocked on the defendant's door around 4:00 a.m., the officers exceeded the scope of the customary license to approach a home and knock because "unexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours." *Id.*

However, even assuming *Lundin* applies in the instant case, the Court has already concluded that the independent source rule applies in its ruling on Baires-Reyes's prior motion to suppress. Docket No. 104; *compare with United States v. Lundin*, 47 F. Supp. 3d 1003, 1026 (N.D. Cal. 2014) (declining to suppress the results of the warranted search because independent source doctrine applied). Here, the items that Baires-Reyes seeks to suppress were seized in the subsequent search of the Ortiz residence with a search warrant. *See* Mot. to Suppress at 1. Because the Court previously concluded that "the Government had met its burden of proof in showing that . . . the independent source rule would apply such that suppression of evidence is not required," the Court **DENIES** Baires-Reyes's second motion to suppress.

## VII.   <u>EXHIBITS</u>

The parties have filed a Joint Exhibit List, which currently lists 45 exhibits. Docket No. 110 (Joint Exh. List). Baires-Reyes has objected to a number of exhibits.

First, Baires-Reyes objects to Photos 28-38, which depict gang-related objects found at the Ortiz residence. The gang-related objects at issue do not appear to belong to Baires-Reyes or Flores-Ayar, but to Cesar Ortiz. As the Court discussed above, the Court will exclude evidence related to Cesar Ortiz's alleged gang affiliation, unless defense counsel opens the door to such questions. The Court will exclude these photos.

Second, Baires-Reyes objects to the bullets recovered from the Ruger pistol magazine recovered from the Ortiz residence, on the ground that they are irrelevant per Federal Rule of Evidence 402 and that their probative value is substantially outweighed by a danger of unfair prejudice under Federal Rule of Evidence 403.[8] Exhibit Nos. 7-9. The Government responds that

---

[8] Baires-Reyes does not object to the magazine or the weapon itself, only the bullets.

the loaded firearm was recovered in a condition consistent with Flores-Ayar racking the weapon and chambering a round, as depicted in the surveillance video of the robbery. The bullets thus are relevant and have probative value in whether the recovered weapon was the one used in the robbery. Further, Baires-Reyes has not explained what prejudice there is from producing the bullets. The Court finds that any such prejudice does not substantially outweigh the probative value of the bullets. Accordingly, the bullets may be introduced.

Third, Baires-Reyes objects to the currency that was recovered from him and Flores-Ayar at the time of their arrest as irrelevant and unfairly prejudicial. Exhibit Nos. 26-27. Baires-Reyes also contends that the currency was never produced to him, in violation of his due process and fair trial rights. The Government contends that currency was seized at the time of the arrest, but the Government has not linked this currency with that taken in the robbery. Indeed, the Government's Criminal Complaint against Baires-Reyes states that the money stolen from the Quick Pick Market was not recovered from either Flores-Ayar or Baires-Reyes. *See* Docket No. 1 (Compl.) at ¶ 23. Thus, the currency is not relevant and must be excluded pursuant to Federal Rule of Evidence 402, as well as 403.

Fourth, Baires-Reyes objects to the January 21, 2015 recorded interview with Cesar Ortiz. Exhibit No. 28. The Government has represented that it will only use the recorded interview as a prior inconsistent statement, and does not otherwise intend to introduce this evidence. The recorded interview is excluded, except for this limited purpose of impeachment through prior inconsistent statement.

Fifth, Baires-Reyes objects to certified conviction documents. Exhibit No. 42. As discussed above, the February 11, 2014 conviction might be admissible for the material issue of whether Baires-Reyes would have known that a gun shown to him was real (should Baires-Reyes testify or argue otherwise), while the August 8, 2014 felony conviction for possession of a controlled substance is admissible for impeachment purposes. Therefore, the certified conviction documents are admissible for these limited purposes.

Finally, Baires-Reyes objects to the MetroPCS business records related to the phone number (650) 630-1287, and the data downloaded from Flores-Ayar's cell phone, seized from the

22

Ortiz residence. Exhibit Nos. 43-44. Because this information was not timely introduced and/or has no apparent relevance to the case against Baires-Reyes, these exhibits are excluded.

## VIII. <u>DEMONSTRATIVES</u>

If a party decides to use a demonstrative, that party should give the opposing party at least one day's notice prior to use of the demonstrative to ensure that any objection may be raised with the Court in advance of use. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

## IX. <u>JURY VOIR DIRE</u>

The Court has reviewed the parties' Joint Proposed Voir Dire Questions. Docket No. 111 (Joint Voir Dire). The parties have no disputes regarding the voir dire questions, except as to whether Question 23 (regarding whether a prospective juror has any experiences or opinions about gangs that will prevent the juror from considering the evidence fairly) will be asked. *Id.* at 5. Because the Court will permit limited mentions of gangs during the trial, Question 23 will be asked.

The Government also requests that the Court give the following summary of the Superseding Indictment to the jury venire at the outset of jury selection:

> The defendant Kevin Baires-Reyes is charged with three counts in a document called an Indictment. The Indictment here alleges that Mr. Baires-Reyes committed a robbery that affected interstate commerce, that he conspired with another person to commit a robbery that would affect interstate commerce, and that he aided and abetted the use, carrying, and brandishing of a firearm during that robbery.
>
> Mr. Baires-Reyes denies that he committed any of the offenses alleged in the Indictment and maintains his innocence.

Government Pretrial Memo. at 4. Baires-Reyes has not submitted a proposed summary or otherwise objected to the above summary. The Court will read the statement to the jury.

## X. <u>JURY INSTRUCTIONS</u>

The Court will issue a proposed set of preliminary jury instructions to the parties and give the parties sufficient time to comment on, or object to, the Court's proposed instructions before the instructions are read to the jury. In the meantime, the Court **ORDERS** the parties to meet and

confer on the jury instructions. The parties should at the very least agree to the form, and should isolate the areas of dispute while providing the authorities for their respective positions. The parties shall submit their revised proposed jury instructions by **Friday**, **July 8, 2016**.

### XI.    <u>VERDICT FORM</u>

The parties originally filed a Joint Proposed Verdict Form. Docket No. 114 (Joint Verdict Form). Baires-Reyes subsequently filed a Proposed Verdict Form, *see* Docket No. 123 (Baires-Reyes Verdict Form), which includes four changes. The Court **ORDERS** the parties to meet and confer on the verdict form, and to propose a revised verdict form by **Friday**, **July 8, 2016**. The parties should isolate the areas of dispute and provide authorities for their respective positions.

### XII.    <u>PROCEDURES FOR TRIAL</u>

The parties are referred to the Court's Guidelines for Trial in Civil Cases (Jury and Bench), which is an available Standing Order on the District website. The Court expects the parties to comply with the sections on "Pretrial Arrangements," "Witnesses," "Use of Depositions to Impeach or Short Read-Ins," "Deposition Designations," and "Objections."

This order disposes of Docket Nos. 107, 115, 125, and 126.

**IT IS SO ORDERED**.

Dated: July 7, 2016

                            _____
                            EDWARD M. CHEN
                            United States District Judge